8 So.2d 528

## HOUSING AUTHORITY OF SHREVEPORT v. HARKEY.

### No. 36530.

April 27, 1942.

Rehearing Denied May 25, 1942.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Hunter & Hunter, of Shreveport, for appellee.

ODOM, Justice.

The Board of Commissioners of the Housing Authority of the City of Shreveport selected and designated a site for a slum-clearance project and other purposes, known as Project La. 2-1, the site selected

consisting of certain lots or parcels of land located within the boundaries of Cleveland, Looney, and Weinstock Subdivisions of Shreveport. Certain property owned by the defendant forms an integral and essential part of the site of the building project. The Housing Authority offered to purchase the property and to pay therefor $2,800, which it alleged was a fair value.

The defendant refused the offer but agreed to sell the property for $5,000. The Housing Authority refused to pay $5,000 and brought this expropriation proceeding. The jury fixed the value of the property at $3,750. There was judgment ordering the property transferred to the Housing Authority upon its paying to the defendant, Mrs. Barbara G. Harkey, the sum of $3,-750, and ordering plaintiff to pay all costs of the suit. From this judgment Mrs. Harkey appealed. The Housing Authority is satisfied with the award.

It is conceded by defendant that the Housing Authority is clothed with the right and power to expropriate the property. Thus the only question now involved is whether the award of the jury is adequate.

The property involved consists of five contiguous lots in the Weinstock Subdivision of the city. Each of the lots measures 40 x 126.25 feet. The lots taken together form one plat, which plat has a frontage of 200 feet on Weinstock Street, which is not paved, and runs back to an alley. The plat as a whole is at the corner of Weinstock Street and Western Avenue, which latter is paved. The only improvements on the property are two small, old, frame houses in bad repair, which, according to the testimony of the witnesses called both by plaintiff and by defendant, are worth approximately $500.

The property involved is situated in a section of the City of Shreveport which is inhabited exclusively by Negroes. Each of the witnesses called definitely classified it as Negro residential property. Some of them testified that the property might be used for other purposes, such as for cheap stores, a funeral home, a Negro church, a filling station on the corner, or as a site for a factory. But their testimony that the plat of ground as a whole might be used for such purposes is purely speculative. In estimating the value of land to be expropriated, the remote possibility that it will at some time be sought for a particular purpose which would increase its value cannot be considered. Louisiana Ry. & Navigation Co. v. Sarpy, 125 La. 388, 51 So. 433; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1.

It was shown by a decided preponderance of the testimony that the plat of ground involved is desirable, in fact choice, Negro residential property. Some of the witnesses were of the opinion that there was no other property in Shreveport quite so desirable for that purpose.

The valuation placed upon the property by each of the witnesses merely reflected his personal opinion. The reason probably was that the property is vacant, or practically so, and was not, at the time of the trial, producing any substantial revenue, nor had it produced any revenue theretofore. The testimony shows that the defendant acquired the property by inherit-

ance about 45 years ago, and that, while she possessed ample funds with which to improve it, yet she had never done so, and through all the years it had remained vacant except for the two small, dilapidated houses, which are of inconsiderable value. Whether she was receiving any revenue at all from the two small houses is not disclosed by the record.

While it is shown that the Housing Authority had acquired approximately 80 per cent of all the property situated within the site selected for its building project, which site included hundreds of individual parcels of ground adjacent or in close proximity to the plat of ground here involved, yet neither side produced any testimony to show the values agreed upon by other property owners and the Housing Authority. Whether there had been any demand for like property in that vicinity or whether there had been any sales of such property prior to the date on which the Housing Authority selected this site for its slum-clearance project is not shown by the record. Neither side attempted to show what the market value of such property was before the Housing Authority proposed its project. There was therefore no basis for comparison, so that the experts called by the respective sides had no criterion which they could use as a basis for fixing values. As we have said, each witness merely stated his personal opinion as to the value of the property.

The estimates of the value of the property vary widely. Plaintiff called as its witnesses to value the property Mr. Teat and Mr. Dunn, both engaged in the real

estate business in Shreveport. Mr. Teat said he thought the plat of ground was worth $2,300 and that the two small houses thereon were worth $450. His total valuation was $2,750. Mr. Dunn said the ground itself was worth $2,400 and the houses $400, or a total value of $2,800. These witnesses estimated the value of each lot separately and as a unit. Each of them placed a value of $600 on Lot 30, which is the corner lot. Each of the other lots was valued by Mr. Teat at $425 and by Mr. Dunn at $450.

The owner of the property advanced the theory that the land to be expropriated should be considered as one plat of ground and not as five separate lots, and that the fact that the lots are adjacent and, taken together, form one plat greatly enhances its value. This was the view expressed by each of defendant's four witnesses. The reason for this view, as expressed by the witnesses, is that, since defendant owned each of the lots, she could use the entire plat as a unit and could build a number of Negro tenant houses close together, some facing on Weinstock Street and others on Western Avenue, and thereby utilize all the space; whereas to use each lot as a unit would result in the loss of a great deal of space. Furthermore, defendant's witnesses testified that a number of small tenant houses grouped together in one block are more valuable than a like number of houses not so grouped together. In other words, it was their theory that, because the five lots were grouped into one plat or unit, the value of the unit was considerably more than the aggregate value of the five lots if each were considered as a separate building lot.

Defendant called four witnesses to testify as to the value of the property. Mr. Roos, who owns a great many Negro rental houses in Shreveport, placed a valuation of $6,000 on the land and $500 on the houses—a total valuation of $6,500. Mr. Leary, an investment broker, valued the land at $5,000 and the houses at $400—a total of $5,400. Mr. Flournoy, who owns a number of houses which he rents to Negro tenants, said the land was worth $5,500 and the improvements $500—a total of $6,000. Mr. Stoer, a prominent Shreveport realtor, who has managed defendant's properties for 15 years, valued the land at $5,000 and the houses at $600—a total valuation of $5,600.

It is thus seen that both plaintiff's and defendant's witnesses were in reasonable agreement as to the value of the improvements on the property, since the lowest valuation of the houses (Mr. Dunn's) was $400 and the highest (Mr. Stoer's) $600. It is in the valuation of the land itself that plaintiff's and defendant's expert witnesses differ so widely.

█ Counsel for defendant argue that the testimony of Mr. Dunn, who valued the property at $2,800, should not be seriously considered for the reason that he was employed by the Housing Authority to make estimates and was therefore an interested witness. Mr. Dunn testified that he inspected this property and estimated its value for the Housing Authority and submitted his report several months prior to the filing of this suit, as he did in other cases, and that he inspected the property again a few days before the case was tried and had not changed his opinion as to its value. He said that the amount paid by the Housing Authority was of no concern to him, and said further that, when he turned in his estimates, he had no means of knowing whether the property would be voluntarily transferred or whether it would be necessary for the Housing Authority to institute condemnation proceedings. He said he was paid so much for each estimate made and submitted. We think that it cannot reasonably be said that he was an interested witness.

█ There is no suggestion that Mr. Stoer, a realtor who testified for the defendant, was an interested witness, and yet he himself said that he had represented defendant in the handling of her other property for about 15 years. The mere fact that Mr. Dunn made the estimate for the plaintiff and Mr. Stoer testified for the defendant affords no reason why we should impute ulterior motives to either witness.

█ The jurors, who live in the vicinity, after hearing all the testimony, valued the property at $3,750. They seem to have given consideration to all the testimony. Jurors in cases of this kind are supposed to have some personal knowledge of property values, and may, to some extent, exercise their own judgment. They are clothed to some extent with the character and authority of experts. They are not authorized, of course, to fix values solely according to their own private opinions, even when they themselves inspect the property. It is their sworn duty to consider all the testimony if not discredited. They seem to have done so in this case.

■ In the case of Housing Authority of New Orleans v. Polmer, 195 La. 608, 197 So. 247, 248, we said:

"The courts and text writers all agree that in the matter of estimating values more discretion is vested in the fact-finding tribunal in condemnation proceedings, and correspondingly less authority is vested in the appellate courts in such cases, than there is in ordinary civil suits. Orgel on Valuation under the Law of Eminent Domain, Sec. 128, pp. 429–436. The reason for the rule, of course, is that a jury of freeholders in a condemnation suit is regarded to some extent as a commission of experts on valuations."

In support of this general statement, the court cited a long list of cases decided by this court.

■■ This case, we think, is governed by the general rule that verdicts of juries in cases of this kind should not be disturbed unless manifestly erroneous. We find no manifest error in the jury's award in this case. We think the Housing Authority should pay all costs of the suit, including the costs of appeal.

For the reasons assigned, the judgment appealed from is affirmed.

FOURNET, J., dissents, being of the opinion that the amount awarded for the property is grossly inadequate and should be increased.