112 So.2d 692 (1959)
237 La. 1005
STATE of Louisiana Through the Department of Highways,
v.
GRAND CONSISTORY OF THE THIRTY-SECOND DEGREE OF THE ANCIENT AND ACCEPTED RITE OF MASONRY for the State of Louisiana, Under the Jurisdiction of the Council of the Thirty-Third Degree for the Southern Jurisdiction of the United States of America.
No. 43807.
Supreme Court of Louisiana.
June 1, 1959.
*693 W. Crosby Pegues, Jr., D. Ross Banister, Baton Rouge, Howard W. Lenfant, New Orleans, for plaintiff-appellant.
Benjamin Y. Wolf, Siegfried B. Christensen, Benjamin Washastrom, Julius C. Pearlstine, Joseph Rosenberg, Luke Cutrera, P. B. Habans, David Gertler, Martin E. Kranz, R. A. Dowling, Lawrence Hennessey, Jr., New Orleans, for defendant-appellee.
HAWTHORNE, Justice.
This is an appeal by the State of Louisiana through the Department of Highways from a judgment of the district court fixing the value of certain property expropriated by it for the purpose of erecting an approach to the new Mississippi River Bridge in New Orleans, and the principal issue presented to this court is the value of the property expropriated. The trial judge found that the property had a market value of $323,837 and awarded this amount to the defendant owner, Grand Consistory of the Thirty-Second Degree of the Ancient and Accepted Rite of Masonry for the State of Louisiana, under the Jurisdiction of the Council of the Thirty-Third Degree for the Southern Jurisdiction of the United States. The judge also fixed the fee of the two expert witnesses of the defendant at $1,000 each and taxed these fees as costs to be paid by the plaintiff. Appellant contends that the market value of the property as fixed by the trial judge is excessive and should be reduced to $266,700, the amount deposited by it in the court. Appellee answered the appeal asking that the award be increased to $429,762.70, and urging that the fee of each of its two appraisers be increased to $2,000 plus $100 a day for each of the three days these appraisers appeared in court.
The tract or parcel of land expropriated lies within Square 214, First District of the City of New Orleans, which square is bounded by St. Charles Avenue, Calliope Street, Carondelet Street, and Clio Street. The property is situated at the corner of St. Charles and Calliope and has a frontage on the lake side of St. Charles of 166 feet 7 inches and a frontage of 223 feet 9 inches on the uptown side of Calliope Street. The tract has a total area of 36,705.7 square feet and was zoned G Commercial.
In cases of this nature this court has often said that the best guide in determining the market value to which the owner is entitled in expropriation suits is evidence of sales of similar or comparable properties in the neighborhood. See Mississippi River Bridge Authority v. Simon, 232 La. 668, 95 So.2d 144, and cases there relied on; Louisiana Power & Light Co. v. Simmons, 229 La. 165, 85 So.2d 251.
In considering the testimony of experts "It is well settled that the testimony of each witness qualified and accepted as an expert should be given effect if and when it appears to be well grounded from the standpoint of sincerity and good sense. See Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541, and authorities there cited". Domino v. Domino, 233 La. 1014, 1022, 99 So.2d 328, 330.
During the trial of this case in the lower court four appraisers testified as experts, two for the plaintiff and two for the defendant. One of plaintiff's experts fixed the value of the property at $269,062, and the other at $266,709. On the other hand, one of defendant's experts set the value of the property at $403,750, and the other at $381,573. We observe that the amount awarded by the trial judge is about $6,000 less than the average of the valuations fixed by the four experts.
Two of the appraisers for the plaintiff and one for the defendant, for the purpose of making their appraisals, broke the tract expropriated into two parcelsone having *694 a frontage of 166 feet on St. Charles Avenue by 127 feet in depth on Calliope Street, and the other a frontage of 95 feet on Calliope by a depth of 160 feet. The other appraiser valued the property as a whole, fixing a value of $10 per square foot for the entire tract. The first three appraisers fixed the value of the St. Charles Avenue frontage at, respectively, $10.50 per square foot, $8.29 per square foot, and approximately $8.50 per square foot. For the rear property fronting on Calliope. two of these appraisers fixed the value at $4 per square foot, and the other at $6.50 per square foot. The judge of the lower court in fixing the value of the property allowed $9.50 per square foot for the St. Charles Avenue frontage and $5.50 per square foot for the Calliope Street frontage. All appraisers agreed that the corner influence had an added value for 60 feet along St. Charles, and the trial judge allowed $7,285 for this. All the experts also agreed that 10 to 15 per cent of the value of the total area should be added for plottage, and for this the trial judge allowed 10 per cent. We might observe here that according to our calculation the value fixed by the trial judge for the entire property comes to approximately $8.82 per square foot.
Appellant takes the position that the appraisals made by appellee's appraisers were not predicated upon a sound basis. In other words, it argues that these appraisals should not have been considered by the trial judge in arriving at the value of the property, and that the best evidence in the instant case is sales of comparable property. In this connection appellant points to some six sales of property in the vicinity on St. Charles Avenue made in 1954, 1955, and 1956, in which the consideration paid ranged from $5.75 to $9.54 per square foot. These sales were taken into consideration by appellant's experts in arriving at their appraised value of the property here expropriated, and appellant says they show that the trial judge erred in awarding $9.50 per square foot for the St. Charles Avenue frontage. Appellant also points to six recent sales of property on side streets in the vicinity of the property expropriated, in which the price ranged from $2.83 per square foot to $11 per square foot, and argues that the trial judge erred in awarding $5.50 per square foot for the property fronting on Calliope Street.
The appraisers for appellee in arriving at the value of the property here involved considered numerous sales of property on St. Charles Avenue and also on other streets in the vicinity of this tract made between 1951 and 1955 at prices ranging from $7.50 to $15.50 per square foot. One of these sales was of property directly across the street made in March, 1955, for $10.30 per square foot. Also among these were one sale made in July, 1953, of property on Camp Street between Howard Avenue and Calliope Street at $15.50 per square foot and another sale in 1955 of a site on St. Charles between Erato and Thalia streets at $9.56 per square foot.
Counsel for the Department of Highways say that it is error to give any consideration to sales where the price per square foot was in excess of that here awarded because these sales were "not true market value transactions between a seller, not forced to sell, and a buyer not forced to buy". Counsel argue that these sales should be disregarded because the buyer in each had special reasons for wanting to purchase the particular tract above all others: Either he owned the adjoining property and was in need of the property acquired for parking facilities or other such purposes, or he already had a business in the neighborhood and valued the good will he had built up there. This line of reasoning is not impressive and cannot be accepted by us. In Mississippi River Bridge Authority v. Simon, 232 La. 668, 95 So.2d 144, 147, the same argument was made. There the expropriating authority's expert refused to use as comparable what he termed "monopoly sales" because in his opinion the high prices paid for those properties were the result of the fact that owners *695 who were already established in a location wanted to buy adjoining land so as to expand or to have convenient parking facilities. When the case was appealed to this court we said:
"We are of the further view that plaintiff's experts were in error in discarding the so-called `monopoly sales' as not reflecting a price between a willing buyer and a willing seller; not only is such a conclusion unrealistic but, as shown by the record, higher prices were paid, not in one or two instances, but in numerous transactions in the vicinity."
Appellant argues that we should entirely disregard the appraisals made by appellee's experts, and that we should accept the valuation of $266,709, which is the lower of the two appraisals offered by its own experts. In other words, appellant itself would have us ignore completely the higher appraisal made by one of its experts.
To us a distinguishing feature of the property here expropriated is its great area of over 36,000 square feet, all zoned G Commercial. According to the testimony property of this type and of such a large area was not available anywhere else in the vicinity on St. Charles Avenue. None of the sales offered in evidence was of property containing such a large area, but these sales are certainly indicative of the value of the property here expropriated and should be considered with the testimony of all the experts in arriving at the true market value of this property.
Counsel for appellant have given us no convincing reason why the testimony of appellee's experts should be disregarded in its entirety. These appraisers were qualified to give expert testimony in the field in which they testified, and their testimony should be given effect since it appears to us to be well grounded from the standpoint of sincerity and good sense. We likewise give effect to the testimony of the experts called by appellant, and the testimony of all these experts when considered with sales of other property in the area convinces us that the trial judge's determination of value should not be disturbed.
What we have said above likewise disposes of appellee's answer to the appeal seeking an increase in the award for the property expropriated.
Furthermore, the showing made by appellee is entirely inadequate to justify an increase in the compensation awarded to its expert witnesses and taxed as costs.
The judgment appealed from is affirmed.