HARDY, Judge.
This is an expropriation suit, and, after trial, the court increased the amount of damages tendered by plaintiff from the sum of $17,169.00 to the principal amount of $92,304.50. From this judgment plaintiff has appealed.
The property taken consists of four tracts of land involving, respectively, 27.075 acres, 10.795 acres, .436 acres, and such a small amount in the fourth tract that it has not been considered in the computations.
The principal claim of defendant is that the property taken is suited for industrial use and that the compensation should be based upon a front foot footage on the described State and Parish Highways.
In accord with our jurisprudence, it may be stated at the outset that the best and most acceptable basis of valuation of property subject to expropriation is, and should be, based upon comparable sales. In the absence of such a controlling standard, other factors are, and must, be, taken into consideration.
The primary contention of defendant in the instant case is that the property taken was suited for industrial purposes, and, therefore, should be valued upon that basis. The contention of plaintiff-appellant is that the probable value of defendant’s property for industrial use is remote and speculative.
Five witnesses for defendant testified as to varying evaluations of the property on the basis of industrial use, and the amounts fixed approached an average in- excess of $130,000.00, which was reduced by the district judge to the extent of some 30%, more or less.
On the contrary, the two witnesses who made appraisals on behalf of plaintiff testified as to the value of the property based upon their conception of its present use as pasturage land and reached a valuation of $17,169.00.
The difference in valuations with respect to the instant case resolves itself into a dispute as to whether the property should be valued as being subject on the market to sale for industrial purposes. In support of their valuations, defendant’s witnesses supported their conclusions as to the industrial nature of the property upon the grounds (1) that the property was serviced by utilities from the City of Minden; (2) that it represented extensive frontages upon the Minden-Sibley Highway; (4) that a number of industrial plants had located in the near vicinity; and (5) that at the time of the taking in 1958 there was a demand for property in this area.
The above are.factual issues and our findings, seriatim, are:
(1). The availability of utilities is desirable for any type of property, residential, commercial or industrial, and does not indicate a specific classification ;
(2). Again, the mere frontage .upon a •highway does not • constitute a classification as to the nature of the use of the property;
(3). The availability of railroad transportation facilities, while particularly desirable and necessary for commercial and industrial properties, should not, in our opinion, be considered as a persuasive • factor in 'determining the use to which the property should be devoted;
(4). Witnesses for plaintiff were able to identify only three industrial - plants, which were not specifically located with relation to the expropriated property. In any *580 event, we could not consider a scheduled location of a small number of industries somewhere in the vicinity of the property expropriated as justifying a general and extensive classification of an industrial area. In this connection, it is pointed out that some years ago a group of Min-den citizens purchased a tract of land which they denominated as “Minden Industrial Park”, apparently located somewhere near the subject property under examination, and have since attempted to procure locations therein for industrial enterprises. This venture has met with little success, inasmuch as only one industry has been located in the park area; and
(5). Although defendant’s witnesses uniformly testified that there was a demand as far back as 1958 for property in this location, and that the defendant himself was approached with reference to placing his properties on the market — which offer was refused —there is not the slightest evidence to indicate the purpose for which this demand existed nor the price which might have been used as a market basis for the purchase thereof.
It is quite true, as enunciated in City of Shreveport v. Abe Meyer Corporation, 52 So.2d 445, that in condemnation cases the fixing of market value should be considered with relation to the most profitable use to which the land can be put with respect to location, topography and adaptability. This principal has been confirmed in Caddo Parish School Board v. Willer, 227 La. 201, 78 So.2d 833; Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491, and other cases. However, it appears to be implicit in the holdings of our jurisprudence that the elements above named must be considered with direct relation to the facts of the individual case. For example, in Parish of Iberia v. Cook, supra, the court declared:
“* *• * possible uses which are so remote and speculative and which would require the concurrence of so many extrinisic conditions and happenings as to have no perceptible effect upon present market value should be excluded from consideration. * * The owner’s plans or hopes for the future should be held completely irrelevant, being more often illusory than real.”
Similarly, in Arkansas-Louisiana Gas Company v. Morehouse Realty Company, 126 So.2d 830, this court observed:
“The intention of the defendant in purchasing the property, the actual development into a subdivision of an area adjacent to the property involved, and the completion of the preliminaries to the development of this identical area into a subdivision, removed the matter, in our opinion, from the realm of conjecture and speculation into one of reality.”
We call attention to the fact that none of the elements noted in the above quotation have been established in the instant case.
Defendant relies heavily upon the opinion of this court in State v. Madden, 139 So.2d 21. The Madden property was located near the property of the defendant in the instant case and it is urged that the front foot valuation used by this court in the Madden case should be applied in the evaluation of damages in the case at bar.
We refrain from the necessity of going into elaborate details in the attempt to distinguish the Madden case, and content ourselves by observing that the property in the cited case consisted of two irregularly shaped tracts of land, one of which was being used at the time for the accommodation of a grocery store and filling station, *581 and the other, located directly across the highway, obviously being susceptible to the same use. The opinion does not recite in detail all of the facts established by the record, but it does indicate that all of the witnessess based their valuations upon a front footage basis. This is not true in the instant case.
In the final analysis, we think it is immaterial whether the valuation is predicated upon a front foot or a per acre basis, so long as it arrives at a figure that provides adequate compensation.
In the instant case we find no justification for the conclusion that the expropriated property should be considered and valued under an industrial classification. The fallacy of such a conclusion may be illustrated by the speculative purpose of a purchaser of land in or adjacent to a growing city who might hope that his property could sometime be developed as a marketing or commercial area in the midst of growing, residential development. Such hopes and projects, even on the part of a wise and experienced business man, are subject to innumerable imponderable considerations.
We think we would be going far beyond any rule of reason in connection with the valuation of expropriated properties if we permitted ourselves to base such valuation upon any nature of conjecture or speculation.
After examination of the facts established by the record before us, we have reached the conclusion that a fair average value of $600.00 per acre should be fixed upon the aggregate total of 39.31 ac^es under consideration. The consequent sum of $23,586.00, together with severance damages in the sum of $6,969.00, and the value of improvements of $653.00 which latter two items were allowed by the district court and are not the subject of serious dispute, amounts to a total principal sum of $31,208.00, which we regard as a fair valuation of the loss and damages incurred by defendant.
Accordingly, the judgment appealed from is amended by reducing the amount allowed from the principal sum of $92,304.50 to the amount of $31,208.00. Inasmuch as defendant received the amount fixed in the judgment of the lower court as of May 23, 1963, he should be, and is, held liable for interest at the legal rate upon the difference between said sum and the amount of this judgment from the date noted until paid.
Defendant is taxed with costs of this appeal.