LeSUEUR, Judge.
Defendants in these consolidated expropriation suits have appealed from a judgment granting plaintiff a 25-foot servitude and right-of-way upon, over and through their property for the purpose of constructing a 14-inch sewerage pipeline with the right of ingress and egress, upon paying Oscar A. Bourgeois, Jr. $500.00 for the part of Lot 12 expropriated, and Oscar A. Bourgeois, Jr. and Mrs. Mary Bourgeois, wife of A. J. Billelo, Jr., $250.00 each for the part of Lot 13 expropriated. Expert fees were allowed in the amount of $350.00 for William Wiegand, Jr., and $200.00 each for George Dejean and S. J. McClendon. All costs were to be borne by plaintiff.
Defendants are the owners of two contiguous tracts of ground located adjacent to U. S. Highway 90 in St. Charles Parish near Boutte, Louisiana. Oscar A. Bourgeois, Jr. is the owner of Lot 12 which fronts on U. S. Highway 90 approximately 275 feet by a depth of almost 6000 feet, and is bordered on the east by a street in an adjoining subdivision. Oscar A. Bourgeois, Jr. and Mrs. Mary Bourgeois Billelo are the owners of Lot 13 which has approximately the same dimensions. Both lots are bisected at approximately the middle of their depth by the Ellington Canal, which runs roughly parallel to Highway 90.
The St. Charles Parish Sewerage District No. 3 Board of Directors voted to expropriate a servitude and right-of-way to install a 14-inch sewerage pipeline, the property sought being a section 25 feet wide on the north bank of defendants’ property parallel to the Ellington Canal. This sewerage pipeline was part of a system running from Boutte through the defendants’ property to an oxidation pond approximately 2 miles southeast of the property. The route decided upon by the Sewerage District Directors was the result of a study made to determine the most feasible route based on ground slope, future growth, etc., and is not an issue on this appeal as the defendants did not contest the right or need of the Sewerage District in taking the land. The route selected for the pipeline servitude would be within the area needed for the extension of Fourth Street in the adjoining subdivision, there being a 50-foot wide dedication along Ellington Canal for that purpose.
The expert opinion of three appraisers was secured to determine the proper value of the property subject to expropriation. All of the appraisers agreed that the area is a rapidly developing residential section *874 with some commercial development on the highway and that the highest and best future use of the property would be residential, as it is lightly wooded and suitable for subdivision purposes. All of the appraisers used the comparable method of determining value, but plaintiff’s expert used a per acre comparable, while defendants’ two experts used a per foot comparable.
The trial judge held that plaintiff’s expert had used the correct comparable value and awarded the defendants $500.00 per lot in payment of the servitude, this amount being the same amount offered by plaintiff prior to the suits. The only issue on appeal is the amount of the judgment for the expropriated rights-of-way.
Plaintiff’s expert appraiser, Mr. Wei-gand, relied upon four sales of comparable undeveloped property fronting on Highway 90 in arriving at his determination of value at a per acre amount. The property closest to that involved in these actions was in St. Charles Parish, one-half mile to the east, where 127 acres were sold at a price of $1,503.00 per acre. The other three sales were 8-10 miles to the east, two of them being 84-acre tracts, the other one 35 acres. The price per acre on these sales ranged from $2,416.00 per acre to $3,654.00 per acre. Although these properties were larger than the ones involved here and were in Jefferson Parish, Mr. Weigand felt that the comparables were still valid since the land was in similar condition and subject to the same best use. His per acre evaluation was $2,500.00 and his value for the expropriated portion of Lot 12 used was $300.00, and for the expropriated portion of Lot 13 used was $400.00.
Defendants’ two experts, Mr. Dejean and Mr. McClendon, used a per foot method of computing comparable prices. Mr. Dejean used five sales, all of which were lots in developed subdivisions very close to the tracts in question. He arrived at a developed per foot evaluation of 29 cents, from which he subtracted 8 cents per foot for the development costs. His assigned values based on these figures were $1,098.-30 for the expropriated portion of Lot 12, and $1,499.82 for the expropriated portion of Lot 13.
Mr. McClendon also used comparables to arrive at his value determination, all of which were in close proximity to the property in question. One comparable was a strip 2 feet wide by 5144 feet long which sold for 39 cents per square foot. Another was an unimproved wooded lot 1000 feet from the subject property which sold for 48 cents per square foot. A third was 6.5 acres of unimproved land which sold for 21 cents per square foot. The fourth was 2 strips 6 feet wide by 50 feet and 51.4 feet long, respectively, which sold for 55 cents per square foot, and were used to join street rights-of-way in the neighboring subdivision. Mr. McClendon arrived at an average figure of 39 cents per square foot developed. In their present condition he valued the expropriated portion of Lot 12 at 26 cents per square foot for a total of $1,359.87, and the expropriated portion of Lot 13 at 24 cents per square foot for a total of $1,714.15, the difference between 39 cents per square foot and the price allowed per square foot on each lot being development costs.
In arriving at the market value of expropriated property, the Louisiana jurisprudence has determined that the market value of similar property is most important, similar property meaning property in the same state and condition and in the same vicinity as the property expropriated This principle has been stated in Louisiana Power & Light Company v. Simmons, 229 La. 165, 85 So.2d 251 (1956):
“Under the jurisprudence of this court the measure of compensation to be awarded in expropriation proceedings is generally the market value of the property — that is, the price paid in a voluntary sale between a willing seller and purchaser. Furthermore, in determining this market value, sales of similar property in the vicinity are most important. *875 Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State, Through Department of Highways v. Hebert, 227 La. 111, 78 So.2d 528; Caddo Parish School Board v. Bland, 228 La. 393, 82 So.2d 687. It is equally well settled that in suits of this kind the most profitable use to which the land can be put by reason of its location, topography, and adaptability will be considered as bearing upon its market value. Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854; City of Shreveport v. Abe Meyer Corporation, 219 La. 128, 52 So.2d 445, and numerous authorities therein cited.”
One of the main reasons for applying a per acre value to the present property, although only a very small part of an acre, is that comparables for the sale of land in similar condition are available, although the area subject to sale is much greater. In the application of undeveloped comparables to undeveloped tracts that are expropriated, the speculative element involved in the unknown costs of development is eliminated. Although the reasonable future use of the property may be considered in determining value, the speculative cost of developing land should not be considered nor should the value of the land after development be considered. The value of the land taken, on the date taken and its condition at that time, determine its value. In Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491 (1959), the Supreme Court held:
“It has been frequently held by this Court that the criterion of value of property expropriated for public use is its market value at the date of the institution of the expropriation suit taking into consideration the use to which the property may be placed and all the uses to which it is adapted, as well as all factors which lead to a replacement of the loss caused by the taking, and excluding any increment of value occasioned by the proposed construction work or work of public utility for which the property is needed. The market value means the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser under usual and ordinary circumstances. Market value does not mean speculative or remote value. Louisiana Ry. & Nav. Co. v. Baton Rouge Brickyard, 136 La. 833, 67 So. 922, L.R.A.1917A, 402; Orleans & J. R. Co. v. Jefferson & L. P. R. Co., 51 La.Ann. 1605, 1616, 26 So. 278; Louisiana R. & Nav. Co. v. Xavier Realty, 115 La. 328, 39 So. 1; Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854; City of New Orleans v. Moeglich, supra [169 La. 1111, 126 So. 675], Of most importance in determining market value are sales of similar properties in the vicinity of that sought to be expropriated. Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So.2d 37, City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36.
« * * *
“The test is the market value of the land as a whole, taking into consideration its value for building purposes of a not too speculative nature. See La. Ry. & Nav. Co. v. Baton Rouge Brickyard, supra; Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672; City of New Orleans v. Moeglich, supra; Housing Authority of Shreveport v. Harkey, 200 La. 526, 8 So.2d 528.
“In the Moeglich case, supra, we approvingly cited the case of Louisville & N. R. Co. v. R. E. E. De Montluzin Co., supra, wherein we held that contemplated subsequent subdivision of property and sale of lots after expenditure of considerable sums on improvements cannot serve as a basis of valuation at date of institution of expropriation, such hopes and plans partaking too much of the character of speculation.”
In the present case, the best use of the subject property would be residential in the form of a subdivision. Although the property adjacent to Lot 12 has been sub *876 divided, no steps have been taken to subdivide, improve, survey, etc., the lots subject to the servitudes requested by plaintiff. We find, therefore, that the trial judge’s acceptance of a per acre value for the property in question is correct.
For the above reasons, the judgment of the trial court is affirmed. All costs on appeal are to be borne by defendants in their respective proportions.
Affirmed.