AYRES, Judge.
Plaintiff, Cypress-Black Bayou Recreation and Water Conservation District, a political subdivision of the State of Louisiana, brought expropriation proceedings against defendants, Lewis Pirkle Conger and Winifred Pirkle Conger, for a recreation area and flowage rights over other property in connection with the proposed Cypress Lake Reservoir east of Benton, Louisiana. Plaintiff seeks to expropriate 49.6 acres “in fee” for the recreation area and an “easement” over two-tenths of an acre for flowage rights, or essentially all of defendants’ 50-acre tract which adjoins Montgomery Suburban Acres Subdivision, a residential subdivision.
The judgment below granted the right of expropriation and fixed the compensation for the land taken, including the timber thereon, in the sum of $8,710. From that judgment defendants appealed.
The parties have stipulated to the ownership, the right of the plaintiff to expropriate and the necessity for the taking. The only question is the amount to which defendants are entitled as compensation.
Defendants’ property is located about three miles east and south of Benton, Louisiana. It is rural property — there is no zoning in the area. The land consists of rolling hills on which there is growing pine and hardwood timber as well as underbrush. The property has no road frontage, but the northwest corner is approximately 60 feet from the Linton CutOff Road, a two-lane blacktop or asphalt-surfaced road. The property is presently being used for the growing of timber.
This suit was filed on July 9, 1969, and, therefore, the value of the property on that date is the basis for determining the compensation to which defendants are entitled. The issue then is, What was the highest and best use of the property on July 9, 1969? LSA-R.S. 19:9; State Through Dept, of Highways v. Hayward, 243 La. 1036, 150 So.2d 6, 8 (1963); Parish of Iberia v. Cook, 238 La. 697, 116 So. 2d 491, 495 (1959); State v. Chadick, 226 La. 367, 76 So.2d 398, 399 (1954).
The highest-and-best-use test applies even though the landowner, at the time of expropriation, may have no plan to sell the property or to put the property to that particular use. State Through Dept, of Highways v. Jenkins, 207 So.2d 380, 388 (La.App., 3d Cir. 1968).
Plaintiff takes the position that the highest and best use of the property is for timber purposes, its use at the present time. Plaintiff called two expert witnesses, Walter L. Hunter and O. W. Deen, both highly qualified appraisers. They, being of the opinion that the highest and best use was for timber purposes, valued the property at $7,172 and $8,710 respectively. Neither expert considered the Montgomery subdivision relevant, as they attributed its success solely to the announced lake and recreation area.
Defendants contend the highest and best use of the property is for residential subdivision purposes, relying heavily on the development of the Montgomery Suburban Acres Subdivision adjoining defendants’ property on the west. In support of their position defendants called one expert, Lawrence L. May, a realtor with 50 years of appraisal experience. May was of the opinion the property was well suited for residential subdivision, and that was the highest and best use in view of the Montgomery subdivision and sales of other land two miles south of the subject property.
The evidence shows the Montgomery subdivision was placed on record in July, 1962, the same year the plaintiff Conser *214 vation District was created. A bond election was held district-wide in November, 1966, to finance the District. Montgomery testified he had applications to sell eleven lots prior to the bond election, but, due to a request from a member of the Board of Commissioners, he did not transfer title to any of the lots until after the election. However, Montgomery said the prospective purchasers did not know about the lake. On the other hand, May’s appraisal states the first sale was made in November of 1968.
We cannot agree with the defendants’ contention that the purchasers of the lots knew nothing of the proposed lake and recreational area, and we are unable to escape the conclusion that the development of Montgomery’s subdivision was at least accelerated by the public knowledge of the district’s existence and the proposed lake. However, such a conclusion does not preclude the determination that the highest and best use of the property is for residential subdivision. The Louisiana Supreme Court, in State Through Dept, of Highways v. Rapier, 246 La. 150, 164 So.2d 280, 282 (1964), quoting from the opinion of the Court of Appeal, stated the rule as follows:
“The Court of Appeal correctly recognized that in an expropriation suit of this nature the proper measure of compensation is the market value of the thing taken, i. e., the price for which the property could be sold by a willing and informed seller to a willing and informed buyer in the condition in which it stood, as well as under the usual circumstances existing, at the time of the expropriation. Further, as it said, market value means the worth of the land considered in the light of its best and highest use, this being the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future. In this connection the Court of Appeal aptly stated: ‘ * * * Potential residential subdivision or industrial use, to serve as the basis of establishing market value in an expropriation proceeding must be shown to be reasonably prospective, as distinguished from remotely prospective, to remove such potential use or classification from the realm of guesswork, speculation and conjecture. If such potential future use is shown within the reasonably near future, the owner is entitled to compensation on the basis of such use notwithstanding the property is not being utilized for such use at the time of taking. * * * ’ Moreover, as the court observed, the landowner bears the burden of proving his claim for additional compensation to a legal certainty and by a preponderance of the evidence. And the cases cited in the Court of Appeal opinion amply sustain all of these' well established rules for determining value of expropriated property.”
We are of the opinion the evidence in the record, especially the testimony of May, affirmatively shows that the subject property lies in close proximity to other similar property in the area which has already been subdivided. Although for the reasons set out above less weight should be given to the Montgomery subdivision, it still must be considered and cannot be discounted entirely. Notwithstanding that the property is without road frontage at this time, the prospect of its development in the reasonably near future is not so remote and indefinite as to be only speculative. Therefore, we conclude the highest and best use of the property is for residential development. Central Louisiana Electric Company v. Dunbar, 183 So.2d 111 (La.App., 1st Cir. 1965).
The only question remaining for our determination is the value of the property for subdivision purposes. May determined the value of the property to be $21,155 by preparing a hypothetical subdivision based on sales in the Montgomery subdivision and sales in the subdivision two miles away. He determined that the 50 acres could be divided into 25 two-acre lots and sold for $1,250 per acre. Assuming the entire 25 lots could be sold in two years, and after subtracting the estimated development costs, *215 he arrived at a value of $21,155. In a second hypothesis, based on sales in the Montgomery subdivision only, May arrived at a value of $13,909, following the same mathematical procedure and based on the same assumption that all the lots would sell within two years.
An appraisal of land suitable for subdivision purposes on the basis of a hypothetical value of subdivided lots if the land were subdivided is improper. Such a determination is too speculative where the property has not been surveyed or platted. The proper method is to value the property on an acreage basis, in its present condition as raw land suitable for subdivision purposes, that is, what a developer would pay for the unimproved land. Parish of Iberia v. Cook, supra; City of Shreveport v. Abe Meyer Corp., 223 La. 1079, 67 So.2d 732 (1953); State Through Dept, of Highways v. Busch, 188 So.2d 495 (La.App., 3d Cir. 1966 — writ refused); State Through Dept, of Highways v. Riley, 143 So.2d 396 (La.App., 3d Cir. 1962).
On examination of the hypotheses, we find that May has indulged in assumptions which are uncertain and conjectural, placing too great an emphasis on the price of individual lots in Montgomery’s subdivision. As the record provides no other evidence as to the fair market value of the subject property for subdivision purposes, we must remand the case to the court below to allow the taking of additional evidence for that purpose.
For the reasons assigned, the judgment appealed is annulled, reversed and set aside, and this cause is remanded to the Honorable Twenty-Sixth Judicial District Court for the Parish of Bossier for the taking of evidence relating to and for a determination of the value of defendants’ property for subdivision purposes and for further proceedings consistent with the views herein expressed and according to law. Plaintiff-appellee is taxed with the costs of this appeal; all other costs are to await the final disposition of the cause.
Reversed and remanded.