STOULIG, Judge.
The sole issue presented by this appeal is the adequacy of the quantum awarded for the expropriated property.
On January 30, 1978 plaintiff, Consolidated Sewerage District of the City of Kenner (Sewerage District), filed this proceeding to expropriate certain property owned by the defendant, OKC Dredging Inc. (OKC), which formed part of a 25 acre site to be used for the construction and operation of a sewerage treatment plant.
It was stipulated the Sewerage District has the right to expropriate and that OKC is the legal record owner of the property which has an area of 370,880 square feet.
The trial court determined the value of the property to be 52 cents per square foot and granted defendant a judgment in the sum of $192,867.60, together with $6,275 expert and attorney fees. Appellant contends, based upon the expert testimony, this award does not justly and fully compensate it for the true value of its property as required by law.[1]
Appellant’s property is vacant, unimproved, covered with brush and trees. It is bounded on the north by vacant land known as Coffey-Dupre Subdivision, the southern part of which comprises a part of the proposed sewerage site; [2] on the south by the right-of-way of Interstate Highway 10; and on the west by the disputed Hurricane Protection Levee right-of-way.
One of the most significant matters in dispute is the accessibility to defendant’s property from Belleview Avenue, which lies to the west of the property. Apparently, this is the only means of access presently *659 existing which does not entail the construction of a bridge or the installation of a roadway across the I — 10 right-of-way.
The Sewerage District contends between Belleview Avenue and the western boundary line of OKC’s property is the right-of-way of the Hurricane Protection Levee as established by the U.S. Corps of Engineers. It claims this right-of-way is now under the control of the Pontchartrain Levee District (or its successor, the Jefferson Levee District) [3] and is no longer open to use by the public or adjacent property owners.
Appellant argues that the Sewerage District has not offered any evidence to establish that the Pontchartrain Levee District or its successor ever acquired title to the right-of-way of the Hurricane Protection Levee and therefore, it does have access to its property from Belleview Avenue.
In support of its position, the Sewerage District’s surveyor, Ronald L. Schumann, located and identified the U.S. Corps of Engineers monuments establishing the right-of-way which was adjacent to and between the western boundary line of OKC’s property and Belleview Avenue.[4] He testified there was a steel barricade across the entire width of the roadway from which extended cables to cover the entire right-of-way at the end of Williams Boulevard and prevent traffic from entering Belleview Avenue. He did admit there were some vehicle tracks parallel to the levee and some shells north of 1-10 right-of-way, indicative of the use of Belleview Avenue. No documentary evidence was tendered to show that the Levee District acquired the right-of-way.
In opposition thereto, appellants submitted evidence that Belleview Avenue and its extension, Grand Lake Boulevard, were accepted by the Parish of Jefferson as part of its major street plan on October 18, 1978, some nine months after the taking. Both OKC’s real estate manager and expert appraiser testified they had access to the property by the shell road.
We conclude that the record does not support a finding that the Pontchartrain Levee District or its successor ever acquired the title to the right-of-way for the Hurricane Protection Levee. The mere fact that the Levee District is a political entity with certain designated functions and powers does not relieve it of the requirement that transactions affecting the title to realty, to be effective against third persons, must be in writing and placed of record. No evidence of compliance with these requirements was introduced. The erection of barricades and policing of the area by the Levee District is not in itself sufficient to establish legal record title in that body. Therefore, we find defendant did have legal access to its property from Belleview Avenue.
The next factor to be considered is the highest and best use of the expropriated property. The appraisers for the Sewerage District and for OKC both agreed that if defendant has access to its property — which we determine it has — the highest and best use would be light industrial. Usually a less restrictive zoning classification of light industrial increases the value of the property over that burdened with the more onerous requirements of residential, etc. However, in the instant matter there is a peculiar condition which renders this result incorrect.
In setting the criteria for determining the highest and best use of expropriated property for market value purposes, the Supreme Court in Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491, 496 (1959) stated in part:
“The possibility for its use for all available purposes for which it is adapted and to which it might in reason be applied should be considered. The ultimate test of value in that respect is what .men of wisdom and prudence and having adequate means would devote to the property if owned by them. . . .”
*660 Applying these standards, we find that light industrial is not the highest and best use of defendant’s property. The unrefuted testimony of Lawrence W. Lambert, the expert engineer presented by the Sewerage District, established that the average ground elevation of this property is 14.1' Cairo data and that 3.75' of fill is necessary to meet the minimum elevation required by the City of Kenner for the issuance of a building permit in this area. His estimate of the cost for the required fill of 70 cents per square foot is likewise not disputed.
Defendant’s own appraiser valued the 370,880 square feet of property at $1 per square foot for industrial use or a total of $370,880 without any allowance for the required fill. If this appraisal is adjusted downward to the extent of the cost of the fill of $259,616 ($370,880 X 70 cents) necessary to utilize the property for industrial purposes, the net value to any knowledgeable buyer would be $111,264.
“The possibility for use” of the property for industrial purposes requires a permit from the City of Kenner which in turn requires it to be filled to grade and unquestionably, no “men [buyers] of wisdom and prudence” would purchase the property for such use without deducting from the purchase price (appraisal value) the cost necessary to comply with the municipal requirements for such use. While normally light industrial is a more desirable classification, in the instant matter the highest and best use to this defendant is its present zoning classification of RR-1.
Using comparable sales of the Coffee-Dupre Subdivision which has the same zoning classification, identical topography, and is contiguous to the northern boundary of the expropriated land, the appraisers for the Sewerage District and for the defendant value the property as residential at 40 cents and 55 cents per square foot respectively.
The trial judge apparently concluded that RR-1 classification was the highest and best use of the property and accepted the valuation of 40 cents per square foot, which he adjusted to 52 cents per square foot to accommodate any increment in value from the date of the comparables to the date of the taking and for the differential in size of the property. We concur in these determinations and find them to be in accord with the existing jurisprudence.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal to be borne by the appellant.

. The pertinent provisions of Art. 1, § 4, La. Const, of 1974, C.C. art. 2633, and R.S. 19:9 and 110 B all require that the property owner be compensated to the full extent of the true value of the expropriated property which it possessed at the time of taking.

. The Coffee-Dupre Subdivision fronts on a drainage canal.

. The Jefferson Levee District was created by Act 62 of 1979.

. Survey of Ronald L. Schumann dated August 15, 1978. Exhibit P-2.