308 So.2d 295 (1975)
CITY OF BATON ROUGE, Plaintiff-Appellant,
v.
ALLIED CHEMICAL CORPORATION, Defendant-Appellee.
No. 10072.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied March 10, 1975.
*296 Joseph F. Keogh, City Parish Atty., Edward V. Fetzer, and Chas. E. Pilcher, Asst. City Parish Attys., Baton Rouge, for plaintiff-appellant.
H. Payne Breazeale, Jr., Baton Rouge, for defendant-appellee.
Before SARTAIN, ELLIS and de la HOUSSAYE, JJ.
SARTAIN, Judge.
This is an expropriation case. On November 9, 1973 the City of Baton Rouge filed expropriation proceedings to acquire 10.009 acres of land owned by Allied Chemical Corporation, which property fronts on the north side of Chippewa Street in the City of Baton Rouge, immediately east of the Baton Rouge-Hammond & Eastern Railroad. Plaintiff deposited $175,000.00 into the registry of the court, which deposit was subsequently withdrawn by defendant, who reserved its rights to contest the adequacy of the valuation of its property, contending that it was worth $341,000.00. Both parties stipulated that the market value of the property would be established as of November 23, 1971. After a trial on the merits of this case, the Court awarded Allied Chemical Corporation the amount of $226,512.00, subject to a credit of $175,000.00, or an increase of $51,412.00. From this judgment the City of Baton Rouge has filed this devolutive appeal seeking to reduce the trial court's judgment, and Allied Chemical has answered the appeal seeking an increase in the award.
Plaintiff called Messrs. J. Clifford Doiron and H. Loren Willet as expert appraisers and defendant called Mr. Oren W. Russell. These appraisers were recognized and accepted as experts by the court.
The subject property fronts 681 feet along Chippewa Street in the City of Baton Rouge and drops in elevation from fifty feet to thirty-seven feet. At the extreme southern end running along Chippewa Street to the northern end of the subject property, there is a twenty-one foot drop at Chippewa Street which is a ditch that carries water from adjacent property of Allied Chemical to a catch basin.
Each appraiser used the market data approach; however, as will be shown, they used varying techniques. The trial judge in his excellent reasons for judgment detailed the procedure used by each appraiser which we adopt with approval, to-wit:
"Mr. Doiron's approach was to divide the comparables into parts containing elevation *297 above fifty feet and those containing an elevation of less than fifty feet, since the subject property had elevation problems. After making a time adjustment, he then arrived at a market price indicator for land in each elevation category. He found approximately half of the Gonzales property to be below fifty feet in elevation as compared to approximately one-third of the subject property. He did not indicate any of the Jack's Cookie property to be lower than fifty feet, although Mr. Russell said that roughly one-third of it was low.
By this analysis, Mr. Doiron arrived at a market price indicator of $22,425.00 per acre for land above fifty feet in elevation, and $5,400.00 per acre for land below fifty feet of elevation. By applying these values to the 6.386 acres of the subject property above fifty feet, and the 3.623 acres below fifty feet, he arrived at a market value of $163,000.00. The difficulty with this approach is that no effort was made to determine what portion of the low property was just under the arbitrary fifty-foot elevation and how much was considerably below it with respect to either of the properties. For example, a majority of the subject below fifty feet may have been in the forty-five/forty-nine-foot elevation as compared to the greater portion of the comparable in the twenty-five/thirty foot category of elevation, or vice versa. The application of a per acre differential from $22,000.00 to $5,400.00, under these circumstances leaves a great deal to be desired. The evidence will in fact bear out just such a disparity, i. e., 125,000 cubic yards of fill being utilized on the Gonzales property and only 55,000 cubic yards on the subject property, although subject is slightly larger and had only approximately sixteen percent less low area (half as compared to one-third).
Mr. Russell attempted to avoid the above situation by pointing out that both the subject and the Gonzales properties had `problems.' Although about the same size and separated only by Chippewa Street, they still could not be compared without finding out the cost of rendering each usable and then relating them. He testified that his investigation revealed that Mr. Gonzales had spent some $267,000.00, or $0.65 per square foot, on the property after the purchase and adjusted the price to $0.99 per square foot, which included the original purchase price of approximately $0.32. By relating the $0.99 figure to subject and subtracting the cost of making it usable, which he estimates at $97,000.00 (this is disputed by plaintiff who contends that $178,000.00 was spent preparing the site) a value of $339,000.00 is arrived at.
This approach, although ordinarily sound, must be viewed with extreme caution when the evidence indicates that a buyer spends twice as much on site preparation as original purchase price ($267,000.00 as compared to $130,000.00 paid for the property); this method may not be reliable in this particular case. This Court is of the opinion that plotage strongly motivated Mr. Gonzales. Although irregularly shaped, this acquisition gave him contiguous property bounded by Choctaw, Chippewa and the railroad because he already owned the property to the south and east of the comparable (see `P-2') bounded by Choctaw and Daisy Streets, on which he had constructed substantial improvements. Even more elaborate and substantial improvements have since been constructed on the comparable.
It should be noted that although the Gonzales comparable formed the primary basis for Mr. Russell's valuation, he cited numerous small parcels to show that the adjusted price was in line. These are not discussed because the Court agrees that their size differences make *298 them of questionable value in attempting to compare them with a ten-acre unimproved site.
Mr. Willet's approach was simply that he thought the value of the subject property was midway between the value of the Gonzales and Jack's Cookie comparables, and since one had sold for approximately $0.30 per square foot and the other for approximately $0.50 per square foot that subject was worth $0.40 per square foot, or $175,000.00.
This Court disagrees with Mr. Willet only to the extent that it feels that the Jack's Cookie property is more nearly identically comparable to subject. It is large enough to require no size adjustment; it is near enough to require no adjustment for being out of the proximity. The evidence indicates that roughly one-third of it required fill as did subject. Is sixty percent the size of subject, and the evidence is that the fill required was approximately sixty percent of the amount required for subject (55,000 cubic yards as compared to 29,000 cubic yards). It has short road frontage but this adjustment would perhaps be offset by the fact that plotate may have figured into this sale, because Jack's Cookie does own a plant in the vicinity but not adjoining the property.
It is the judgment of the Court that if the purchase price of $0.49 per square foot is adjusted five percent for time, as suggested by Mr. Doiron, to arrive at a price of $0.52 per square foot, that it can be validly compared to the subject in value. This would cause the subject property to have a value of $22,651.20 per acre, or a value of $226,512.00 for the ten-acre tract as of November 23, 1971.
Accordingly, judgment will be rendered in favor of defendant and against plaintiff in the amount of $226,512.00, subject to a credit of $175,000.00 previously paid herein, with interest on the sum of $51,512.00 at the legal rate, from November 23, 1971, until paid. Insofar as allowable by law, the costs of these proceedings are to be paid by plaintiff, which costs are to include an appraisal and witness fee to Mr. Oren W. Russell in the amount of $1,000.00."
As noted above, the judge a quo agreed primarily with Mr. Willet, one of plaintiff's appraisers, but made the adjustment he thought proper.
We are of the opinion that this adjustment is sound in reasoning and properly reflects the true value of the subject property. In the trial of a case such as this, much discretion is vested in the trier of fact in the evaluation of and weight to be given to the testimony of each expert witness. Vested with this discretion he is not bound to accept or reject the testimony of any particular witness in toto and his conclusions based on the collective testimony of two or more witnesses will not be disturbed on appeal unless such findings are clearly in error. State Department of Highways v. Salassi, 244 So.2d 871 (La. App.1st, 1971), State Through Department of Highways v. William T. Burton, 219 So.2d 837 (La.App.3rd, 1969), writ refused, 254 La. 14, 222 So.2d 67 (1969).
Accordingly, for the above reasons, the judgment of the district court is affirmed and all such costs as are permitted by law are assessed against plaintiff-appellant.
Affirmed.
de la HOUSSAYE, J., concurs in the result.