MARVIN, Judge.
The state appeals from a determination of just compensation for property expropriated for highway purposes to be in excess of the amount deposited by the state under the “quick-taking” provisions of Title 48 of the Revised Statutes.
The property is unimproved, situated in an area primarily residential, which is surrounded on the north, east and south by other areas which are within the municipal limits of Shreveport. The property is about 1,000 feet south of the 70th Street city limit on the south of the Greater Shreveport Municipal Airport, and about one mile east of the intersection of Jewella and Mansfield Roads. Approximately 250 feet south of the property is Pine Forest Subdivision, a residential subdivision which is within the city limits of Shreveport. With depth of 247.5 feet, the property fronts 165 feet on Walker Road, a northerly-southerly blacktopped public road which *368 intersects the Meriwether Road, an easterly-westerly blacktopped road north of the property.
The appellee-landowner bought the .938 acres of property on May 25, 1968, for $4,500.00. The taking occurred almost five years later, on February 26, 1973.
At the time of the taking, the state’s appraisers valued the property at $5,100.00 which was the amount deposited in court. At the trial, different appraisers for the state respectively valued the property at $5,956.00 and $6,750.00, the latter appraisal allowing $100.00 for a fence and a gravel driveway on the property. Two appraisers for the landowner respectively valued the property at $10,725.00 and $10,500.00. The lower court awarded $10,500.00 as just compensation.
The record reflects the rapid development of the southwest area of Shreveport in recent years and especially since the landowner’s acquisition. A water line now runs along and across Walker Road in front of the property. An expensive home has been erected between the property and the city subdivision to the south. In the general area of the property, retail stores, a high school, an elementary school, and direct accessibility to major thoroughfares have been completed, and a park has been dedicated. The municipal limits and city services and utilities have been extended to within 250 feet of the property. Some or all of these factors were considered by the several witnesses testifying as to fair market value. A part of the trial court’s opinion on the appraisal issues reads as follows :
“The State’s appraisers approached the problem of appraising the property in question from a raw land point of view. The defendants take a prime residential point of view of the property in question. The State has attacked the defendants’ appraisals as being a deliberate attempt to distort. The Court does not find same to be the case .
“The Court was impressed by the testimony of defendants’ witnesses who were more experienced and familiar with the area, the changes, developments and fluctuation in property values. The property in question is directly abutted to a residental area. Its highest and best use seems to be that of residential. The State acknowledges the Court’s discretion where you have presented difficulties such as in this case, i. e. really no appropriate comparables within a reasonable time frame to determine the value of the property in question. The State began with the raw land transaction in 1968 and moved forward. The defendants take developed residential property and then assimilate a comparison with the property in question deducting a percentage which the appraisers compute between 50-75 per cent for development costs.” Record, page 49-50
The state contends the lower court erred in not accepting alleged comparable sales used by its appraisers and instead accepting lot sales in the city subdivision some 250 feet south of the property which were used as alleged comparables by the landowner’s appraisers.
One comparable, as contended by the state, is an elongated tract of almost four acres north of the property taken, on which was situated a frame house, which was sold for almost $2,800.00 per acre in 1971. Another, and contiguous to the property taken, is almost two acres which was sold to a church for $4,800.00 per acre more than six years prior to the taking. The third contended comparable is an elongated five acre tract containing a Jim Walter type frame house about Jfsths mile from the subject property which sold in January, 1970, for $2,700.00 per acre. The state’s appraisers also used the landowner’s purchase of the subject property for $4,500.00 in 1968, as a comparable and increased these figures because of development in the area to reach a per acre value of $7,200.00.
*369 The landowner’s appraisers averaged the subdivision lot sales at approximately 50 cents per square foot and deducted 50 percent therefrom for development cost to reach a valuation of approximately 25 cents per square foot. This was the approximate value assigned to the property taken by the landowner’s appraisers. The subdivision lots were approximately 72 x 130 feet, about one-fourth the size of the property taken which was 165 x 247.5 feet. The landowner argues that there were “two” lots in the 165 x 247.5 tract, each of which was “comparable” to one subdivision lot. The state argues that the smaller subdivision lots resulted in a higher per square foot valuation than a larger lot such as under consideration here. The state also argues that the lower court was in error in apparently accepting only a 50 percent deduction for development cost when one of the landowner’s appraisers acknowledged on cross-examination a 60 percent development cost plus a 15 percent “economic factor” cost could be deducted. Notwithstanding these arguments, the appraisers generally allowed for development costs, subdivider’s profit and selling costs in adjusting the value of the property taken, as we appreciate their testimony. We cannot say that the trial court abused its discretion in its determination of just compensation because the preponderance of the evidence shows that in size, location and other characteristics, the property taken is a residential lot more comparable to the lots of the subdivision than to the four and five acre elongated tracts (the depth of which are 1200 feet or more) which are upheld by the state as “true” comparables. None of the sales asserted as comparables were in reasonable proximity in time to the time of the taking. It has been held that only recent sales are of particular significance in determining value,[1] and we agree with the trial court’s assessment that there are “really no appropriate comparables within a reasonable time frame” on which to make a valuation.
We believe the trial court’s determination is supported by the evidence and that there has been no abuse of discretion. See City of Baton Rouge v. Allied, Chemical, 308 So.2d 295, (La.App. 1st Cir., 1975).
We affirm, at appellant’s cost.

. See Southwest Electric v. Conger, 254 So.2d 98 (La.App.2d Cir., 1971).