346 So.2d 1113 (1977)
CITY OF NEW ORLEANS
v.
Elvira Louise Wiener, wife of/and Lewis A. GIRAUD.
No. 8027.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1977.
*1114 Phillip S. Brooks, Henry W. Kinney, III, New Orleans, for plaintiff-appellant.
Salvador M. Cusimano, Thomas L. Giraud, New Orleans, for defendant-appellee-cross appellant, Elvira Louise Wiener.
Before SAMUEL, GULOTTA and BOUTALL, JJ.
*1115 GULOTTA, Judge.
In March, 1975, the City of New Orleans brought this expropriation suit for property required in the Crowder Road and Chef Menteur Highway grade separation project.[1] Both parties appeal the trial court's award for property taken and for severance damages. Defendant further seeks an increase in the $3,500.00 award for attorney's fees.
The property in question used or otherwise affected by the proposed construction project is an area of vacant land situated at the intersection of Crowder Road and Chef Menteur Highway in the City of New Orleans. The area of land actually to be used by the expropriating authority measures 84,450.6 square feet.[2]
In addition to the property actually taken, contiguous property owned by defendant is adversely affected by the construction project. A "control of access" (a chain link fence or some other form of restraint) will be permanently constructed along the border of the property actually used and for an additional distance of 247.08 feet along the eastern side of Crowder Road. (See the segment P-Q on Appendix 1.) This control of access severely curtails the ingress and egress to 53,842 square feet of property owned by defendant directly adjacent to the property taken. (See areas designated D and E on Appendix 1.) Following completion of the project, this portion of ground will no longer front on Crowder Road, and ingress and egress to it can only be accomplished from other property fronting on the thoroughfare. Accordingly, severance damages were awarded by the trial judge with regard to this portion of land adversely affected by the control of access.
Though the parties do not dispute the total area of property actually taken and the total area adversely affected by the project, they disagree on three major issues: 1) the location of the zoning line dividing the property taken (or adversely affected) into commercial and residential portions; 2) the unit value to be placed on the land taken (or adversely affected) based on a market data approach using comparable sales; and, 3) the propriety of an award for severance damages in excess of the value of the property adversely affected.

LOCATION OF ZONING LINE
The property in question is traversed by a zoning line running from East to West and dividing the land into residential and commercial portions. Land to the south of the zoning line is zoned C-1 (commercial), whereas the land to the north of the line is zoned RS-2 (residential). (See Appendix 1.) Defendant contends that a line running from point A to point Y in Appendix 1 accurately reflects the zoning line as pictured on the official zoning map of the City of New Orleans. Plaintiff, on the other hand, contends that line AZ, as pictured on Appendix 1, is a true representation of the official line. The location of the zoning line determines the proportion of RS-2 and C-1 property taken and property subject to severance damages.[3]
*1116 The City, in support of its claim on the location of the zoning line, offered the testimony of John Luecke, surveyor, who stated that in drawing the line he first referred to the official zoning map of the City of New Orleans, from which he located two points on the zoning line on either side of the subject property. The official zoning map line, according to Luecke, runs from the mid-point of Tulsa Street on the eastern side of the subject tract to a point at the intersection of Lot F and Lot 1 (marked on Appendix 1) on the western side of Crowder Road. He established the zoning line by connecting these two points. (See line AZ on Appendix 1.) This line would run 500 feet north of Chef Menteur Highway.
Defendant's expert, John E. Walker, a civil engineer, used a different method to establish the zoning line. Employing the scale as shown on the official zoning map, he determined that the zoning line intersects with the easternmost portion of the lots fronting on Flake Avenue at a distance of 600 feet north of Chef Menteur Highway. Following the "dimensional control" or scale method rather than the "point-to-point" method employed by the expropriating body, Walker located the zoning line by connecting the mid-point of Tulsa Street to the point (Y) 600 feet north of Chef Menteur Highway. (See line AY in Appendix 1.)
In his reasons for judgment, the trial judge stated, "The Court is convinced that the survey of Mr. Walker correctly locates the line which separates the C-1 zoned area from the RS-2 zoned area." Though it is true, as pointed out by the City, that the line established by Luecke is consistent with the official zoning map insofar as it connects the points as shown therein (the mid-point of Tulsa Street on the East and the lot line of Lot F on the West), the line established by Walker is consistent with the scale of the official zoning map.
Furthermore, Harold R. Katner, Director and Secretary of the City Planning Commission of the City of New Orleans, produced the official zoning map on which the distance from Chef Menteur Highway to the property line of Lot 1 is designated as 598 feet. Point Y of Walker's line, located 600 feet north of Chef Menteur Highway, more closely approximates this distance than does point Z of Luecke's line, located 500 feet north of the highway. Katner's testimony is consistent with the location of the zoning line as determined by Walker. This witness further testified that zoning lines generally follow street rights-of-way and that Walker's line follows the Tulsa right-of-way. Apparently the trial judge felt that Walker's line was more consistent with the official zoning map than Luecke's line despite the fact that the former does not intersect the physical points shown on the map.[4] The evidence considered, we cannot say he erred. We conclude, therefore, as did the trial judge, that the line established by Walker (line AY in Appendix 1) correctly reflects the zoning line dividing the property into commercial and residential areas.

VALUE OF PROPERTY EXPROPRIATED
Several appraisers testified during trial and submitted appraisal reports relative to the value of the commercial and residential areas expropriated.
Eugene Aschaffenburg, an appraiser who testified on behalf of the City, was of the opinion that the commercial portion of the property taken was worth $3.30 per square foot to a depth of 250 feet north of Chef Menteur Highway. He evaluated the remainder of the commercial portion beyond that depth at $2.10 per square foot. He *1117 appraised the residential portion at $1.28 per square foot. In evaluating the commercial portion, Aschaffenburg testified that the square footage values of long, narrow commercial tracts decrease in proportion to the distance from the street upon which the property fronts. He considered the subject property to be such a tract and employed a "depth chart" of values. In preparing the chart, he examined comparable sales of commercial tracts along Chef Menteur Highway. In arriving at the two values corresponding to the commercial property north and south of the arbitrary 250-foot line, however, Aschaffenburg stated that he made favorable upward adjustments in value because defendant's property is situated on the corner of two major thoroughfares. In appraising the residential portion, he used comparables in the Castle Manor subdivision which is located to the east of the subject property and bordered on the south by Chef Menteur Highway.
The comparable sales of both residential and commercial properties used by Aschaffenburg dated as early as 1963. He stated, however, that values along Chef Menteur were either stable or decreasing. His appraisal report, completed in early 1972, is based on the Chef Menteur Highway influence on the property and comparables located on Chef Menteur or in close proximity to that highway.
V. G. Bob Warner, another expert testifying on behalf of the City, followed essentially the same method used by Aschaffenburg in evaluating the commercial and residential property. He arrived at a value of $3.20 per square foot for the commercial property to a depth of 250 feet north of Chef Menteur and $2.00 per square foot for the portion beyond that depth. He appraised the residential property at $1.33 per square foot. He, like Aschaffenburg, considered the Chef Menteur Highway to be the dominant factor influencing the value of the subject property. His appraisal was completed on April 1, 1972.
Appraisers who testified on behalf of defendant, however, viewed the paramount factor influencing the value of the property to be its frontage on Crowder Road. These appraisers, who completed their reports in 1975, used comparable commercial and residential sales of property fronting on Crowder Road in the vicinity of Lake Forest Boulevard and Interstate Highway 10, approximately. 8's of a mile from the subject property. There are no comparables along Crowder Road closer to the subject property.
Using these Crowder Road comparables, Jim Maloney appraised the commercial portion of the property to be taken at $4.50 per square foot. The comparable sales cited by Maloney in his report occurred during the period from 1973 through 1975 and ranged (discounting the lowest and highest sales) from $2.50 per square foot to $5.50 per square foot. In arriving at his appraisal of the commercial portion, Maloney, while recognizing the dominant influence of Crowder Road and the trend in development toward defendant's property, stated in his report that his appraisal of $4.50 per square foot is "about $1.00 a square foot less than the going rate on Crowder and Lake Forest Boulevardthe center of activity at this time." He testified that some downward adjustment was made in consideration of the distance between the commercial portion of defendant's property and the I-10-Lake Forest Boulevard hub of activity. Maloney indicated, however, that defendants' property is the only commercial property fronting on Crowder Road between the I10 activity and the Chef Menteur Highway. This expert further pointed out that property located at the corner of Crowder Road and Chef Menteur Highway (Parcel 4-1 on Appendix 1) was purchased at $5.84 per square foot in 1974. This property, according to Maloney, is of less utility than defendant's property.
The comparable sales of residential property used by Maloney are also in the Lake Forest Boulevard area and are subject to the influence of Crowder Road. They ranged in value from $1.11 to $2.03 per square foot. He placed a value of $1.50 per square foot on the residential portion of the subject tract.
John Burke, another expert who testified on behalf of the property owners, arrived at *1118 appraisal figures of $4.40 per square foot for the commercial portion and $1.40 per square foot for the residential. He also considered the I-10-Lake Forest Boulevard area of Crowder Road to be the dominant influence on the value of the property and used essentially the same comparables as Maloney.
In expropriation cases, the property owner is to be compensated at the market value of the property taken according to its highest and best use. State, Through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973); State, Department of Highways v. Covington Interstate, Inc., 295 So.2d 828 (La.App. 1st Cir. 1974), writs denied, 299 So.2d 800, 801, 802 (La.1974). Market value is determined as of the date of the taking. State, Department of Highways v. Trippeer Realty Corporation, 276 So.2d 315 (La.1973); State, Department of Highways v. St. Tammany Homestead Association, 304 So.2d 765 (La.App. 1st Cir. 1974), writ refused, 307 So.2d 373 (La.1975). In the instant case, the time of the taking is the date of the institution of the expropriation suit, i. e., March, 1975. Louisiana Power & Light Company v. Simmons, 229 La. 165, 85 So.2d 251 (1956); State, Through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1962). In ascertaining the market value, much discretion is given to the trial judge in weighing the testimony of experts, and his finding of value based on such expert testimony will not be disturbed unless clearly erroneous. State, Department of Highways v. Browning, 315 So.2d 784 (La.App. 1st Cir. 1975); City of Baton Rouge v. Allied Chemical Corporation, 308 So.2d 295 (La.App. 1st Cir. 1975).
The evidence considered, we cannot say that the trial judge has abused his discretion in accepting the Maloney appraisal and rejecting the values presented by the City's appraisers. The property in question fronts on Crowder Road and is in close proximity to the area of development from which the Maloney comparables were obtained. In his reasons for judgment, the trial judge indicated that rapid development has taken place during 1973 and 1974 along Crowder Road in the vicinity of I-10. He further noted that the appraisals made by the City's experts were based on comparable sales made in 1972 or earlier along Chef Menteur Highway and did not reflect the rapid development and rise in property values along Crowder Road. On the other hand, the Maloney report completed in 1975, the year in which the expropriation suit was filed, more accurately reflects, according to the trial judge, the development and more closely approximates the value of the subject property at the time of the taking. We conclude the evidence provides a substantial factual basis for the trial judge's decision to reject the values presented by the City's appraisers and to adopt the findings of the more recent Maloney report. Accordingly, we find no error in the trial judge's award of damages for property taken.
We reject defendant's request for an increase in the value of the commercial property taken. The basis of defendants' claim for an increase is the fact that $5.84 per square foot was paid by the expropriating authority to the adjacent property owner for Parcel 4-1. According to defendants, under the due process and equal protection provisions of the U.S. and Louisiana Constitutions,[5] they are entitled to be compensated at the same square footage value. We find no merit to this argument.
Market value is defined as the price agreed upon at a voluntary sale between a willing seller and a willing purchaser under usual and ordinary circumstances. Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491 (1959); Central Louisiana Electric Co. v. Mire, 140 So.2d 467 (La.App. 1st Cir. 1962). Value of a particular piece of property is affected by size, shape, location, time of purchase, utility of the property and other relevant factors. Merely because one property owner receives a certain price does not necessarily presuppose that other property owners in the vicinity are entitled to receive the same price. Depending *1119 upon several factors, the price may be higher or lower. Sales of property similarly situated to the subject property may be relevant as comparables used in evaluating the subject property to be expropriated, but cannot serve as a basis for invoking the due process and equal protection provisions of the U.S. and Louisiana Constitutions as argued by defendant.

SEVERANCE DAMAGES
The trial judge awarded the sum of $144,061.00 as severance damages to the 13,214 square feet zoned C-1 and 40,628 square feet zoned RS-2 remaining. As previously stated, these damages result from the curtailment of ingress and egress occasioned by the control-of-access fence to be constructed along Crowder Road.
In awarding damages, the trial judge relied upon figures presented in the Maloney report. The trial court's total severance damage award contemplates diminution in value and cost to cure, i. e., use of additional property for access, use of property for a roadway and the expense of constructing the roadway. General agreement exists that the remaining residential property has virtually no value, for severance purposes, unless costs are incurred to cure the property as outlined in the Maloney report.
However, the City contends the trial judge erred in awarding damages with regard to the residential portion remaining in excess of the value of this property prior to the taking. When such damages (including the cost to cure) exceed the value of the property before the taking, the City argues that it should be adjudicated ownership of the remaining property damaged by the taking upon payment of its value before the taking.
In State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969), cited in the City's brief, the court, stated:
"* * * The `cost to cure' concept has been brought into our appellate court jurisprudence apparently by various expert appraisal witnesses, and some appellate courts have adopted it without referring to it as a `cost to cure' theory. If such an approach has relevance to the measure of damages, it should only be employed to demonstrate a diminution in market value resulting from the partial taking . . . . * * *"
See also State, Department of Highways v. Oil Mark Corporation, 324 So.2d 606 (La. App. 2d Cir. 1975), writ denied, 326 So.2d 380 (La.1976). Because the cost to cure in our case is in excess of the value of the residential portion prior to the damage, we consider the severance damage to be 100% of the pre-expropriation value. Accordingly, we conclude that the trial judge was in error in awarding damages in excess of this value.
We find no merit, however, to the City's contention that the property adversely affected should be adjudicated to the expropriating body. Clearly established is the rule that only property that is reasonably necessary for the public purpose is to be expropriated. LSA-Const.1974, Art. I, Sec. 4. Parish of Iberia v. Cook, supra; Central Louisiana Electric Co. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369 (La.App. 1st Cir. 1961). It is undisputed that the remaining commercial and residential property upon which severance damages were allowed by the trial judge is not needed in the grade separation project.
Total reliance by the trial court on the Maloney figures, in connection with severance damages, is misguided.

COMMERCIAL
Maloney stated that the remainder zoned C-1 worth $4.50 per square foot, before the taking, will be reduced in utility, after the taking, from commercial to residential use and that the triangular shape of the remainder will further reduce its residential value from $1.50 per square foot to $1.20 per square foot. On the basis of these before-and-after values, he calculates the damage to the commercial remainder as $43,606.20. However, as indicated by the trial judge, the experts are in general agreement that the residential property *1120 sustained 100% severance damage. Further, we find no error in the trial court's acceptance of the value (before the taking) of the remaining residential property at $1.50 per square foot, as determined by Maloney. Because the commercial property has been reduced in utility, according to Maloney, from commercial (before the taking) to residential (after the taking) and the residential property has sustained 100% severance damage, the severance damage for the remaining commercial property requires assessment based on 100% severance damage. Accordingly, the severance damage for the remaining commercial property amounts to 13,214 square feet multiplied by $4.50 per square foot, or a total of $59,463.00.

RESIDENTIAL
Maloney calculates the severance damage to the residential portion remaining as $100,454.90. According to Maloney, the residential portion of the tract behind the control-of-access fence can only be developed by constructing a cul-de-sac or dead-end street with access to Crowder Road through other residential property owned by defendant north of the control-of-access point. The cost of access will be $28,165.50; the cost of the street will be $47,000.00; and, the loss in value of the residential tract will be $25,289.40 (the loss in value occasioned by transformation of otherwise salable residential land into the cul-de-sac and by the change in configuration of the remaining land).
Because the cost to cure the remaining residential property exceeds 100% severance damages, defendant is entitled only to the amount of 100% of value, before the taking. The trial judge erroneously based the residential severance damage award on the cost to cure and not on 100% severance. We reduce this award. One hundred per cent severance damage to the 40,628 square feet of remaining residential property at $1.50 per square foot totals the sum of $60,942.00.[6] Accordingly, total severance damages (to both the commercial and residential areas) are reduced from $144,061.00 to the sum of $120,405.00.[7] The award in the sum of $379,602.00[8] in damages for the property taken is affirmed.
We likewise affirm the trial court's award of $3,500.00 in favor of defendant as reasonable attorney's fees. The increase requested by defendant is not supported by evidence which would lead us to conclude that there has been an abuse of the trial court's broad discretion in setting the award.
In all other respects, the judgment of the trial court is affirmed.
AMENDED AND AFFIRMED.
*1121 
NOTES
[1] The purpose of the project is to elevate and extend Crowder Road across Chef Menteur Highway, Louisville & Nashville Railroad and Gentilly Highway to Almonaster Avenue. The property which is the subject of this suit is needed for the construction of a half-clover-leaf interchange at the intersection of Crowder Road and Chef Menteur Highway.
[2] Designated as Area B and Area C comprising Parcel 4-2 on Appendix 1 attached. The property measures 194.09 feet on Chef Menteur Highway by a width in rear on a curved line of 267.46 feet by a depth on one side of 402.44 feet and on the opposite sideline (nearer to Crowder Road) of 645.09 feet.

Appendix 1 is an exhibit introduced into evidence. For purposes of clarity, we have superimposed on the exhibit (Appendix 1) the following additional designations: Lot F, Lot 1, P, Q, Y, Z, Area B, Area C, Area D, Area E and Parcel 4-1.
[3] The placement of the zoning line (AY) as contended by defendant results in the following characterization: Area B (C-1 actually taken) = 84,309.2 square feet; Area C (RS-2 actually taken) = 141.4 square feet; Area D (C-1 property severed and denied access) = 13,214.0 square feet; and, Area E (RS-2 property severed and denied access) = 40,628.0 square feet.

On the other hand, placement of the zoning line (AZ) as argued by the City of New Orleans results in the following ratios: Area B (C-1 actually taken) = 83,217.1 square feet; Area C (RS-2 actually taken) = 1,233.5 square feet;
Area D (C-1 property severed and denied access) = 7,856.0 square feet; and, Area E (RS-2 property severed and denied access) = 46,700.0 square feet.
[4] Lot 1 and Lot F intersect 500 feet north of Chef Menteur Highway. Nevertheless, the zoning map designates this distance as 598 feet. The trial judge, in written reasons, acknowledged the existence of "some possible discrepancies on the Official City Zoning Map". Nevertheless, he concluded that Walker's line was consistent with the scale and the designated dimension on the official map. The judge further noted that the proper method for correcting any error on the official map is through an ordinance passed by the City Council of New Orleans.
[5] U.S.Const. Amend. 14, Sec. 1; LSA-Const. 1974, Art. I, Sec. 2 and Sec. 3.
[6] Maloney computes the pre-expropriation value of the remaining residential property at $62,789.40. Multiplying his $1.50 per square foot valuation of the residential property by the remaining residential area (40,628 square feet), we calculate the value of the residential portion adversely affected as $60,942.00.
[7] Severance damages to 13,214 square feet zoned C-1 amounts to $59,463.00. Severance damages to 40,628 square feet zoned RS-2 amounts to $60,942.00. Total, $120,405.00.
[8] Property taken 84,309.2 square feet zoned C-1 at $4.50 per square foot amounts to $379,391.40. 141.4 square feet zoned RS-2 at $1.50 per square foot, according to Maloney, amounts to $210.40. Total, $379,602.00.