SAMUEL, Judge.
Robert F. Wilson, as curator for William A. Smith, an interdict, filed this suit against the State of Louisiana to compel the defendant to honor an option to reconvey to *741 the interdict’s estate certain property in Metairie, Louisiana, which had been expropriated in 1959 for the construction of Interstate Highway 1-10. The original area expropriated from Smith contained 14,332 square feet for which he was paid $0.30 a square foot by the State. He now seeks to recover 5,281 square feet of land which presently fronts the 1-10 service road. Plaintiff also seeks an injunction prohibiting the State from selling the property at auction.
In 1963, four years after the expropriation proceeding was filed, Smith became engaged in litigation concerning title to the remaining unexpropriated property. His attorney obtained a land survey, which indicated an area of 5,281 square feet of land fronting the 1-10 service road adjacent to Smith’s remaining property had not been incorporated into the 1-10 system, even though it had been expropriated from Smith in 1959 for that purpose. Smith’s attorney sent a copy of the survey to the Department of Highways and requested re-conveyance of the unused property in return for payment of $0.30 a square foot, the expropriation price paid by the State.
A right-of-way attorney for the Department of Highways, Leslie Benton, Jr., advised Smith’s attorney by telephone and letter that the resale of this land to Smith had been approved by the State Department of Highways and the United States Bureau of Public Roads. Smith’s attorney advised Benton the land would be repurchased as soon as Smith ended the litigation over title to the property.
On May 8, 1972, another attorney representing Smith wrote Benton, advising him judgment had been rendered in Smith’s favor and that Smith desired to purchase the property in accordance with the Department’s letter agreement. On November 9, 1972 Thomas C. Bickman, Headquarters Property Manager for the Louisiana Department of Highways, responded to this letter and advised the attorney that another party also claimed the property in dispute and because of these conflicting claims over title to the over-expropriated property, the Department had decided to sell that property at public auction.
In 1974 litigation began which involved, among other things, whether Smith had transferred title to the disputed property to one Joseph A. Danos, Jr. On March 4, 1977 Smith was declared an interdict, and his cousin, Robert F. Wilson, was appointed his curator. Wilson made an appearance in the suit over the disputed property, and in November, 1979 a settlement was reached between Wilson and other interested persons. This agreement acknowledged that Smith was the sole owner of the property in suit.
The foregoing facts were presented to the trial court by a motion for summary judgment filed by Wilson on behalf of the interdict. After a hearing, judgment was rendered granting the motion and ordering the State of Louisiana, Department of Transportation & Development, to sell to Smith, through his curator, the 5,281 square feet in question at the price of $0.30 per square foot. The State has appealed from that judgment.[1]
The facts upon which plaintiff bases his motion were set forth by affidavit and numerous exhibits. At the time of the hearing the State filed affidavits attempting to establish issues of fact.[2] However, a reading of the State’s affidavits show that they do not raise any material issues of fact and the only issue for decision is a question of law.
Plaintiff contends the true issue is whether the State or the original owner of over-expropriated property is entitled to its enhanced value upon its sale. Plaintiff argues that because the State’s power of expropriation over private property is an extraordinary governmental right, the government should have no concomitant right to benefit for any error it may have *742 made in taking more land from a private owner than it needed for public purposes.
Plaintiff concedes the right of eminent domain comes into being automatically with the establishment of a government or body politic, without the necessity of recognition of such right by constitutional or statutory authority.[3] He argues, however, that subsequent provisions of both the federal and state constitutions respecting power to take private property by expropriation are not grants of such power, but rather limitations on the sovereign power of eminent domain. He points out that Amendment V of the United States Constitution provides “. . . nor shall private property be taken for public use, without just compensation.” Such a limitation was established in the Í921 Louisiana Constitution, in Article 1, § 2 thereof as follows:
“No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.”
A similar limitation was retained in the Constitution of 1974, Article 1, § 4, which provides, in pertinent part:
“Property shall not be taken or damaged by the state or its political subdivisions except for public purposes . . . . ”
This is the kernel of plaintiff’s argument, that private property shall not be taken, except for public purposes.[4] He argues that when the State expropriated Smith’s property in 1959 it took 5,281 square feet more than was necessary. He further argues that even though the property was originally taken for public use in accordance with state law, it is nevertheless uncontro-vertible that through the power of eminent domain more property was taken by the State than was necessary. He also points out that at the time of expropriation there was no way for Smith or anyone other than the defendant to determine more land was being expropriated than needed, so that there was in fact no basis for Smith to object to the taking of the over-expropriated property. Consequently, plaintiff contends he is entitled to repurchase the property not taken for public use at the price at which it was “purchased” from him by the State.
The State’s basic argument is that plaintiff should have filed a motion to dismiss the petition for expropriation of his property within 10 days of service of the expropriation suit in accordance with R.S. 48:447, which, in pertinent part, provides:
“Any defendant desiring to contest the validity of the taking on the ground that the property was not expropriated for a public purpose may file a motion to dismiss the suit within ten days after the date on which the notice was served on him.. .. ” (Emphasis ours).
The State thus argues plaintiff is forever barred from contesting the over-expropriation of his property. The State also relies on R.S. 48:221 which, prior to its 1977 amendment, provided in part:
“However, such property may be sold to the original vendor, or his successors in title, of the property to the department or to any adjoining owner whose property is separated from the highway by such excess area at a private sale, within the discretion of the department, upon payment of the original cost to the department or its present appraised market value, whichever is the greater.” LSA-R.S. 48:221.
Thus, the State contends its right-of-way attorney did not possess legal authority to agree to resell the over-expropriated property to plaintiff at the original expropriation price of $0.30 per square foot.
Plaintiff attempts to distinguish the last quoted statute by stating it applies only to property acquired by the State by private sale or donation and cannot be constitutionally applied to property the State has acquired through over-expropriation.
*743 As pointed out above, the Louisiana Constitution of 1921[5] plainly provided private property shall not be taken or damaged except for public purposes. The settled jurisprudence is that the state is only entitled to take what it needs for public purposes; any over-expropriation is illegal. In New Orleans Pacific Railway Co. v. Gay,[6] the Supreme Court stated:
“There is no. doubt that the title in fee of the property of a citizen may be taken, if necessary for purposes of public utility, adequate compensation therefor being made. But the only basis, for this right of expropriation, is the needs of the public. The property of no man can be taken without his consent, beyond what is demanded by the public necessity. This results, we think, from the provisions of the Federal and State Constitutions, which declare in substance that vested rights cannot be divested by the State, nor private property be taken, except for purposes of public utility. To entitle the public to take private property, two things are necessary; first, the interest of the public must require it, and second, adequate compensation must be made.
We think it a fair deduction and corollary of these propositions, that the public can take no more, either in quantity or estate, than will suffice the public wants. If necessary, the fee may undoubtedly be taken; but if not necessary, it cannot.” (Emphasis ours).
In City of New Orleans v. Giraud,[7] this court stated the proposition as follows:
“We find no merit, however, to the City’s contention that the property adversely affected should be adjudicated to the expropriating body. Clearly established is the rule that only property that is reasonably necessary for the public purpose is to be expropriated.”
Finally, in City of New Orleans v. Moeglich,[8] the Supreme Court stated in pertinent part:
“. . . It would be unreasonable to charge plaintiff with the duty of discovering that the Department, twelve years later, would place the fence, not on the line which it designated as the proper location in its own acquisition, but instead some 25 feet farther within plaintiff’s land.”
Thus, it is clear the State acted illegally by expropriating more land than was needed for highway purposes.[9] The question remaining for our decision is whether the plaintiff is still entitled to take advantage of that illegality in view of the statutory provisions relied upon by the Department.
The State relies on R.S. 48:447, relative to expropriations for highway purposes, quoted above, which gives a property owner ten days to contest the validity of expropriation of his property by motion to dismiss. The remedy afforded by this statute is limited in nature, and harsh from the viewpoint of the landowner, but nevertheless needed in order to facilitate public purposes by allowing the rapid acquisition of land by expropriation.
However, in the present ease plaintiff had no way of knowing the State illegally over-expropriated his land. He thus argues he could not contest an over-expropriation of which he was not aware. The expropriation suit was filed on December 17, 1959, but the first survey revealing the over-expropriation was not made until 1963, after the highway was completed.
The State contends this is immaterial, that Smith shares with every other person the right to file a motion to dismiss the expropriation suit within ten days, and his failure to exercise that right resulted in its forfeiture even though he did not know of the over-expropriation.
*744 The appropriateness of this argument by the State seems doubtful. Should this rule be enforced as the State argues, every property owner henceforth would be in the position of filing, as a matter of course, a motion to dismiss every expropriation proceeding to determine whether the State has expropriated more land than needed for public use. If this practice would be encouraged, the very purpose of the quick-taking statute would be defeated, and the State would be obliged to litigate every expropriation to its finality before a public road or other public project could begin. Such a holding would drastically limit the state’s power of quick expropriation rather than foster it.[10]
A more logical solution was reached in the analogous case of Powell v. Department of Highways.[11] In that case plaintiff sued to recover the value of property actually taken by the state after he sold portions thereof to the Department of Highways. Excess property had been fenced by the Department in 1971, but plaintiff only discovered the error in 1976. At that time he filed suit for the value of the property erroneously fenced by the state. The Department of Highways filed an exception of prescription based on R.S. 13:5111, which provides a three year prescription for damage claims for property taken other than by expropriation. This court ruled as follows:
“It is quite true that the Constitution only allows private property to be taken to the extent that the public interest demands, and no further, and expropriation beyond the public interest and necessity would obviously be unconstitutional.”
The analogy of the Powell case to the cáse now before us is a valid one. Plaintiff had taken from him by the State property which, for all he knew, was needed for highway purposes. He could only have known the property was not to be used for highway purposes after completion of the Interstate Highway and the service road next to it. This was discovered by a land survey made approximately four years after the taking, and only then did plaintiff, through his attorneys, become aware that his property had been over-expropriated. We conclude it is the duty of the State to act within the legal limits of its authority in expropriation matters, and when it fails to do so the property owner has a right to reclaim what has been taken from him illegally and not used for public purposes without regard for the ten day period mentioned in R.S. 48:447. In our view, to hold otherwise would have the effect of rendering the statute unconstitutional under the facts present here. Here, the statute is constitutional only if its ten day limitation period is restricted to contests over the validity of the taking, i. e., its public purpose, and not made applicable to contests over the extent of the taking. Additionally, the construction more accurately conforms to the statute’s literal wording.
The State further argues this court has no authority to review the necessity of an expropriation. It relies on State v. Guidry.[12] However, the holding of the Guidry case on that point was repudiated by the Supreme Court in State, etc. v. Jeanerette Lumber & Shingle,[13] as follows:
“As our discussion of these enactments indicates, the Guidry Court was in error in relying upon the broad reference to public purpose in Section 460 to decide that courts could not review the determinations of the Department on the extent of the taking....”

No language in the Constitution or in the statutes has been found, and none is pointed out, which prohibits judicial review of a Department determination that *745 property should be taken for highway purpose.

.... A need for judicial review of the Department’s determinations is of special significance for it exercises the power of expropriation, one of the attributes of sovereignty most fraught with the possibility of abuse and injustice.”
Thus, we conclude we are within the authority afforded the courts in passing upon the necessity of the expropriation in the present case.[14]
The final question for our determi-' nation is the validity of the agreement by the State Department of Highways to re-convey the property to the plaintiff at the original expropriation price. The fact of the agreement to reconvey the property at the expropriation price is documented by plaintiff’s exhibits. We do not deem the agreement unenforceable as in violation of R.S. 48:221, quoted above. That statute allows property over-expropriated to be sold to the original “vendor” upon payment of the original cost to the Department or the appraised market value of the property, whichever is greater. However, the statute presupposes the excess property offered by the State has been acquired by it legally. Such is not the situation in the present case, and we maintain the State is obligated to reconvey at $0.30 a square foot.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. A judge ad hoc originally heard the motion in the absence of the regular trial judge. However, on rehearing, the trial judge granted plaintiffs motion.

. This is contrary to C.C.P. Art. 966.

. See State v. Ouachita Parish School Board, 242 La. 682, 138 So.2d 109.

. Louisiana Constitution of 1921, Article 1, § 2.

. As does the corresponding provision of the 1974 Constitution.

. 32 La .Ann. 474.

. La.App., 346 So.2d 1113, at p. 1119.

. 169 La. 1111, 126 So. 675.

.In the present case the State acted under Art. 6, § 19.1 of the Louisiana Constitution of 1921 which granted ex parte expropriation power for “highway purposes”.

. We also note R.S. 48:447 is permissive and not mandatory in its wording.

. La.App., 383 So.2d 425.

. 240 La. 516, 124 So.2d 521.

. La., 350 So.2d 847, at pp. 855 and 856.

. See also State v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725; and Kansas City S. & G. Ry. Co. v. Meyer, 166 La. 663, 117 So. 765.